[No. S005221. Dec. 1, 1988.]

MICHAEL HUTNICK et al., Plaintiffs and Appellants, v. UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Defendants and Respondents.

COUNSEL

Kent Walker, Stephen J. Gay, Deborah D. Ditore and Bullen, McKinley, Gay, Keitges & Pach for Plaintiffs and Appellants.

James B. Thompson for Defendants and Respondents.

OPINION

KAUFMAN, J.—As provided by Civil Code section 3144.5,[1] the statute of limitations for an action on a mechanic's lien release bond is six months from the recording of the bond. We granted review in this case to determine how this statute of limitations affects a mechanic's lien foreclosure action commenced *before* the recording of the release bond. For the reasons to follow, we conclude that section 3144.5's limitation period was not intended to and does not apply to pending lien foreclosure actions. Accordingly, if a lien foreclosure action has been timely filed before the recording of the bond and the surety has thereafter been made a party defendant to the action, the surety may not invoke section 3144.5's limitations period as a defense.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of their third amended complaint, which we assume to be true for purposes of this appeal (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503]), plaintiffs Michael Hutnick and Tree Care, Inc., entered into an oral agreement with Thomas R. Henderson (Henderson) and Murieta Village Development Company (Murieta) to perform services consisting of planting, trimming, tree removal and insect control. The work was to be performed on property which Murieta was in the process of buying from Tana Investments (Tana) under a duly recorded installment contract. Plaintiffs fully performed under the agreement but were paid only $8,000 against a total bill of $29,208. In October 1982 plaintiffs recorded a mechanic's lien against the property on which the work had been performed.

In December 1982, plaintiffs timely filed a complaint alleging a common count to recover an agreed sum for work performed, a count seeking damages for breach of an oral contract, and a count seeking to foreclose the mechanic's lien. Plaintiffs subsequently filed first and second amended

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

complaints adding a cause of action for declaratory relief and making other minor changes. The defendants named in these pleadings included Murieta, Henderson, Tana, and defendants designated by fictitious name as Does I through XXX. The fictitiously named defendants were alleged to be persons claiming an interest in the liened property and persons acting as agents for the other defendants.

While the action was pending, Fred Anderson (Anderson) acquired Tana's interest in the property and instituted foreclosure proceedings which resulted in the property being freed from Murieta's installment contract. On July 26, 1985, Anderson recorded a lien release bond from United States Fidelity and Guaranty Company (United) pursuant to section 3143.[2] On July 30, 1985, notice of the release bond's recording was served on plaintiffs as required by section 3144.5.[3] In March 1986 plaintiffs served United as Doe V with summons and the second amended complaint.

United demurred and the court sustained its demurrer with leave to amend on the ground the complaint stated no cause of action against United and, in particular, stated no cause of action on the lien release bond. Plaintiffs then filed a "third amended complaint" adding a cause of action for recovery on the bond. Both United and Anderson were named as defendants to this cause of action but Anderson was not served and has not appeared in the action. United demurred to the "third amended complaint" on the ground suit on the lien release bond had not been brought within six months of the bond's recording as required by section 3144.5. This demur-

---

[2] Section 3143 reads: "If the owner of property, or the owner of any interest therein, sought to be charged with a claim of lien, or any original contractor or subcontractor disputes the correctness or validity of any claim of lien, he may record in the office of the county recorder in which such claim of lien was recorded, either before or after the commencement of an action to enforce such claim of lien, a bond executed by a corporation authorized to issue surety bonds in the State of California, in a penal sum equal to 1½ times the amount of the claim or 1½ times the amount allocated in the claim of lien to the parcel or parcels of real property sought to be released, which bond shall be conditioned for the payment of any sum which the claimant may recover on the claim together with his costs of suit in the action, if he recovers therein. Upon the recording of such bond the real property described in such bond is released from the lien and from any action brought to foreclose such lien. The principal upon such bond may be either the owner of the property or the owner of any interest therein, or any original contractor, subcontractor, or sub-subcontractor affected by such claim of lien."

[3] Section 3144.5 provides: "Any person who obtains a lien release bond which is recorded pursuant to Section 3143 shall give notice of the recording to the lienholder by mailing a copy of the bond to the lienholder at the address appearing on the lien. Service of the notice shall be by certified or registered mail, return receipt requested. Failure to give the notice provided by this section shall not affect the validity of the lien release bond, but the statute of limitations on any action on the bond shall be tolled until the notice is given. Any action on the lien release bond shall be commenced by the claimant within six months of the recording of the lien release bond."

rer was sustained without leave to amend and judgment was entered accordingly in favor of United.[4]

Plaintiffs appealed and the Court of Appeal affirmed, stating that when a valid mechanic's lien release bond is recorded, a pending mechanic's lien foreclosure action is "terminated" and the owner of the liened property is entitled to a dismissal, leaving no party in privity with the surety to be bound by a judgment in the action. Surmising that one purpose of section 3144.5 was to provide a mechanism for bringing a release bond surety into a lien foreclosure action once the lien was released, the Court of Appeal concluded that when the release bond is recorded during a pending foreclosure action, the lienholder is required, within six months of the bond's recording, to file a supplemental complaint stating an action on the bond. As plaintiffs had failed to file a supplemental complaint stating an action on the bond issued by United within six months of its recording, the Court of Appeal concluded that any recovery on the bond was barred by section 3144.5 and that United's demurrer had been properly sustained. We granted review to determine whether these conclusions are correct. We conclude they are incorrect.

## DISCUSSION

Mechanic's lien law derives from our state Constitution, which provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) ■ The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637], fn. omitted.) "[S]tate policy strongly supports the preservation of laws which give the laborer and materialman security for their claims." (*Id.* at p. 827.)

■ The purpose of the release bond procedure is to provide a means by which, before a final determination of the lien claimant's rights and without prejudice to those rights, the property may be freed of the lien, so that it may be sold, developed, or used as security for a loan.[5] Section 3143

---

[4] A demurrer by Tana to the cause of action for foreclosure of the mechanic's lien was also sustained without leave to amend but the suit remains pending as an action for breach of contract against Henderson and Murieta.

[5] Under section 3171, a release bond may also be used to release construction funds withheld pursuant to a stop notice.

provides that a mechanic's lien release bond "shall be conditioned for the payment of any sum which the claimant may recover on the claim together with his costs of suit in the action, if he recovers therein." The "claim" for which the principal and surety assume liability in the bond is the "claim of lien." (See fn. 2, *ante*.) The release bond procedure thus protects the lien claimant by providing an alternate source of recovery on the claim of lien. The release bond procedure "does not deprive the [lien claimant] of its constitutional right to a lien" but "[o]n the contrary, it provides for the speedy and efficient *enforcement* of such lien . . . ." (*Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271 Cal.App.2d 175, 184 [76 Cal.Rptr. 753], italics added.) The recording of the release bond does not extinguish the lien; rather, the bond is substituted for the land as the object to which the lien attaches. (See Marsh, Cal. Mechanics' Lien Law (3d rev. ed. 1988) § 8.28 ["The recordation of the bond in effect transfers the claim of lien from the owner's land to the bond."].)

▆▆ Because recovery on the bond is a part of the process for enforcing the mechanic's lien, authorities from other jurisdictions have concluded that a cause of action to foreclose a mechanic's lien is substantially the same whether relief is sought against the liened property or against a bond which has been substituted for the property. Thus it has been said that the bond "does not change the relation or rights of the parties otherwise than in substituting its obligations for the [property] subject to the lien, and it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights." (*Harley* v. *Plant* (1914) 210 N.Y. 405, 410 [104 N.E. 946, 947]; see also, *United States* v. *Certified Industries, Inc.* (2d Cir. 1966) 361 F.2d 857, 861; *Ohio Plate Glass Company* v. *Paskin* (1965) 4 Ohio Misc. 136 [33 Ohio Ops.2d 179; 209 N.E.2d 640, 642] [amendment of complaint alleging recording of bond and seeking relief against surety "does not change the cause of action in any way"].)

Recognizing that only a single cause of action is involved, courts of other jurisdictions have held that if a mechanic's lien foreclosure action has been timely commenced and the complaint is then amended to bring in a surety and to obtain relief on a lien release bond, the amendment is not itself subject to any limitations period. (*Ohio Plate Glass Company* v. *Paskin, supra,* 209 N.E.2d 640, 642; *American Fire & Cas. Co.* v. *Davis Water & Waste* (Fla.App. 1978) 358 So.2d 225, 227; see also, *Canam Systems* v. *Lake Buchanan Dev. Corp.* (Fla.App. 1979) 375 So.2d 582, 583.)

The analysis of these sister state decisions is sound. In seeking to enforce their mechanic's lien first against the liened property and subsequently against the release bond plaintiffs have pursued a single cause of action. (Cf. *Commercial Centre R. Co.* v. *Superior Ct.* (1936) 7 Cal.2d 121, 126-128 [59

P.2d 978, 107 A.L.R. 714].) ■ Once an action has been timely commenced by the filing of a complaint, the filing of a supplemental or amended complaint which does not introduce a new cause of action is not subject to the statute of limitations. (*Taylor* v. *Marine Cooks & Stewards Assn.* (1953) 117 Cal.App.2d 556, 561 [256 P.2d 595].) ■ In a properly pleaded mechanic's lien foreclosure action, an amended or supplemental complaint[6] alleging the recording of a release bond and seeking recovery against the bond does not introduce a new cause of action and therefore is not subject to a statute of limitations.

The limitations provision of section 3144.5 reads: "Any action on the lien release bond shall be commenced by the claimant within six months of the recording of the lien release bond." Invoking the familiar rule of statutory construction that when statutory language is clear and unambiguous "there is no need for construction, and courts should not indulge in it" (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]), United argues that this language can only mean that when a release bond is recorded during pendency of a lien foreclosure action, the claimant must, within the time prescribed by section 3144.5, file a supplemental complaint alleging the recording of the bond and naming the principal or surety, or both, as parties defendant. On the contrary, a more plausible argument supports a different interpretation. Under express statutory provisions, the release bond may be recorded "either *before* or *after* the commencement* of an action to enforce [the] claim of lien" (§ 3143, italics added) and, as United concedes by its argument, recovery on the bond may be obtained in the action to enforce the claim of lien. In this context, section 3144.5's language—"Any action on the lien release bond shall be *commenced . . .* within six months . . ." (italics added)—may more reasonably be read as applying only to an action "*commenced*" by the claimant *after* the bond's recording and not to an action, such as the one in this case, which was already pending at the time of the bond's recordation. At a more fundamental level, United's argument fails because it rests on the assumption that the recording of the release bond gives rise to a cause of action on the bond which is separate and distinct from the cause of action to foreclose the claim of lien. As we have observed, this assumption is incorrect.

Section 3144.5 was enacted in 1983 (Stats. 1983, ch. 351, § 1, p. 1554). Before that time, it was uncertain whether the applicable limitations period

---

[6]Facts occurring after filing of a complaint, such as the recording of the bond in the present case, should be pleaded by supplemental rather than amended complaint (Code Civ. Proc., § 464) but courts regard substance and not labels in determining the sufficiency of a pleading. (See *Jaffe* v. *Carroll* (1973) 35 Cal.App.3d 53, 58 [110 Cal.Rptr. 435] ["Since the pleading are a means to an end and not an end in themselves, we must determine the status of the pleadings from the facts pleaded rather than from the title or prayer for relief."].)

for an action on a mechanic's lien release bond was the 90-day period for an action to foreclose a mechanic's lien (§ 3144) or the four-year period for an action on an obligation in writing (Code Civ. Proc., § 337). (See Comment, *The Release Bond Statutes; Achieving Balance in the Mechanics' Lien Laws* (1980) 28 UCLA L.Rev. 95, 112-118.) A legislative committee report on the bill by which section 3144.5 was enacted states that it was intended to resolve this uncertainty and to require that the lienholder be notified of the recording of the release bond to eliminate the "cumbersome situation" in which a lienholder who is ignorant of the bond's recording sues to foreclose the lien and is then required to amend the complaint to include a cause of action on the bond. ■ ■ ■ ■ (Assem. Com. on Judiciary Rep. on Sen. Bill No. 432 (June 27, 1983).)[7]

■ Thus the Legislature's intent in enacting section 3144.5 appears to have been to resolve an existing uncertainty regarding the limitations period for an action on a release bond and to provide for prompt notification of the lienholder so that if the bond is recorded before the lienholder has commenced suit, the lienholder will be aware of the controlling limitations period and will frame the complaint initially as an action to foreclose on the bond rather than as an action to foreclose on the liened property. There is no indication that the new statute of limitations was intended to apply to a lien foreclosure action pending at the time of the bond's recording.

In sections 3144 and 3144.5 the Legislature has provided two limitations periods for the enforcement of a single right—the right embodied in the mechanic's lien. It may not lightly be inferred that the Legislature intended to require a plaintiff seeking recovery on a single cause of action to comply with two limitations periods—one at the filing of the action and another to

---

[7] The Court of Appeal declined to consider this report, stating that "the views of a committee staff member are not appropriate legislative history." However, it is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. (See *Southern Cal. Gas Co. v. Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]; *Southern Pac. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 271, 278-279 [120 P.2d 880]; *Planned Protective Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1, 15 [245 Cal.Rptr. 790]; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 22 [239 Cal.Rptr. 272]; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].) The United States Supreme Court has long followed a similar practice in using committee reports as an aid in construing federal legislation. (See *Commissioner* v. *Bilder* (1962) 369 U.S. 499, 502-505 [8 L.Ed.2d 65, 68-69, 82 S.Ct. 881]; *Wright* v. *Vinton Branch* (1937) 300 U.S. 440, 463, fn. 8 [81 L.Ed. 736, 744, 57 S.Ct. 556, 112 A.L.R. 1455].) The rationale for considering committee reports when interpreting statutes is similar to the rationale for considering voter materials when construing an initiative measure. In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it.

respond to subsequent self-protective steps taken by defendants or their successors-in-interest. Neither the language nor the available legislative history requires a construction of section 3144.5 under which the limitations period therein prescribed would be *in addition to* the period prescribed in section 3144. Moreover, any such construction would "deteriorate the lienor's rights" (*Harley* v. *Plant, supra,* 210 N.Y. 405, 410 [104 N.E. 946, 947]) and thus raise serious constitutional questions under the provision quoted above, authorizing the Legislature to provide for the "speedy and efficient enforcement of [mechanic's] liens." ▮ It is a familiar rule of construction that statutes should be interpreted in a manner which avoids constitutional difficulties. (*Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 772 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214].)

▮ For these reasons, we conclude that the two limitations periods are alternative rather than cumulative.[8] The facts existing when the complaint is filed determine which section is applicable. Section 3144.5 controls if a release bond has been recorded; otherwise, section 3144 controls. Accordingly, section 3144.5's limitation period may not be invoked as a defense if the plaintiff has timely commenced a lien foreclosure action, that action is pending when the release bond is recorded, and the plaintiff seeks recovery against the bond in the pending action.

▮ While the foregoing analysis explains why the new factual allegations regarding the recording of the bond are not subject to section 3144.5's limitations period, arguably it fails to explain completely how the action is timely as against the surety and the principal on the bond, who may have been brought into the action long after its commencement. While the timeliness of the action as against the new parties could be analyzed in terms of the "relation back" doctrine (see *Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]), this mode of analysis would be awkward given that the events which made these parties subject to suit occurred subsequent to both the accrual of the mechanic's lien foreclosure cause of action and the filing of the complaint.

---

[8] As noted, a lien release bond is "conditioned for the payment of any sum which the claimant may *recover on the claim* . . ." (§ 3143, italics added), and the surety thus has no obligation on the bond to pay or do anything until there has been a recovery on the claim of lien. Yet because section 3144.5's six-month limitation period runs from the recording of the bond, and because prosecuting a mechanic's lien foreclosure action to judgment is likely to require at least a year, the six-month limitations period may expire before the surety has incurred any obligation on the bond. This anomaly in the statutory scheme underlies the dispute in the present case and reinforces our conclusion that the limitations period was intended to apply only when the bond is recorded before commencement of the lien foreclosure action, thereby making an action on the bond a substitute for, rather than a continuation of or sequel to, an action to foreclose against the liened property.

██ ██ The action as against United is timely because, in general, the statute of limitations provides no defense to the successor of a party timely sued. (See Code Civ. Proc., §§ 385, 1908.) Thus where an individual defendant dies or becomes incompetent, title to property at issue is transferred, or a corporate defendant is merged or dissolved, the substitution of a representative or successor in place of the named defendant may not be challenged on the ground that the statute of limitations has expired as to the representative or successor. (*Hibernia etc. Soc.* v. *Wackenreuder* (1893) 99 Cal. 503, 510 [34 P. 219]; see also, *Dougherty* v. *California Kettleman, etc.* (1937) 9 Cal.2d 58, 84-85 [69 P.2d 155].) Although the present case does not involve a direct substitution of parties, it is similar in that the release bond has been substituted in place of the liened property after the cause of action accrued and the new parties' liability is premised on this substitution. The principle under which the statute of limitations is satisfied in the former situations is also broad enough to cover the present case.

██ These conclusions make the procedure in respect to release bonds parallel to that statutorily prescribed for litigation bonds generally. As provided in the Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.), a surety on a bond given in an action or proceeding submits itself to the jurisdiction of the court in all matters affecting its liability on the bond and this liability may be enforced either by civil action or by a motion "without the necessity of an independent action" (*id.* at §§ 996.420-996.440). Similarly, when a mechanic's lien foreclosure action is commenced and a release bond is thereafter recorded, the lien claimant may obtain recovery against the bond's surety in the pending action without having to plead a new cause of action or comply with an additional limitations period.

These conclusions also make the mechanic's lien procedures consistent with the only reasonable construction of the corresponding provisions governing oil and gas liens, which secure payment for labor and materials used to drill or operate oil and gas wells (see Code Civ. Proc., §§ 1203.52-1203.53). Property subject to an oil and gas lien, like property subject to a mechanic's lien, may be released from the lien by the recording of a bond. (Code Civ. Proc., § 1203.60, subd. (a).) Significantly, the provision stating the limitations period for an action to enforce an oil and gas lien—i.e, Code of Civil Procedure section 1203.61—also governs the time for bringing suit on the bond. (Code Civ. Proc., § 1203.60, subd. (b).) In other words, an action on the bond, like an action on the lien, generally must be commenced within 180 days of the recording of the *lien*. But this means that if the *bond* is recorded during pendency of a lien foreclosure action and more than 180 days after the recording of the lien, the time to sue on the bond will have expired before the bond was even recorded. Obviously, the Legislature

could not have intended the limitations period for an action on an oil and gas lien release bond to apply when the bond is recorded after suit has been commenced to enforce the lien. (See *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 268 [131 Cal.Rptr. 231, 551 P.2d 847] [statutes should be construed to avoid absurd consequences].)

 There is one other problem here that concerned the Court of Appeal and apparently caused it to conclude that section 3144.5's limitation period applies even if a lien foreclosure action is pending when the bond is recorded. Stated generally, this problem is how a surety on a lien release bond can be held liable in a lien foreclosure action if the principal on the bond is not a party to the action. More particularly, the Court of Appeal questioned how the surety may be held liable if a property owner who is the principal on the bond is, as it concluded, entitled to a dismissal from the action once the bond is recorded. The latter formulation of the problem is based on an erroneous premise—a property owner who is a principal on the bond is not entitled to a dismissal from the lien foreclosure action.

The Court of Appeal was mistaken in relying on *Frank Curran Lbr. Co.* v. *Eleven Co., supra,* 271 Cal.App.2d 175, as authority for the proposition that the recording of the lien release bond entitles an owner of the liened property, who is also the principal on the release bond, to a judgment of dismissal. In that case, the principal on the release bond was not a property owner but rather the general contractor, who was also a party to the lien foreclosure action. Because the landowners were not principals on the bond, and because the property was released by the bond, the court held it was proper to dismiss the action as to the landowners "since no personal judgment could be rendered against the landowners . . . so that the action could proceed against the other defendants against whom a personal judgment might be rendered." (271 Cal.App.2d at p. 185.) These "other defendants" included the general contractor.

In *Borello* v. *Eichler Homes, Inc.* (1963) 221 Cal.App.2d 487 [34 Cal.Rptr. 648], the landowner *was* the principal on the lien release bond and remained in the lien foreclosure action after the bond was recorded. One of the issues considered on appeal was whether the trial court had acted correctly in rendering a personal judgment against the landowner. Justice Sullivan, writing for the Court of Appeal, noted that the landowner was not in contractual privity with the lienholder and was not liable by agency principles, but concluded that the personal judgment against the landowner was nonetheless proper "because of the release of [the landowner's] property from the lien following the furnishing of a bond . . . on [the landowner's] behalf." (At p. 497, fn. 9.) In other words, the landowner was personally

liable as the principal on the lien release bond up to the amount stated in the bond.

Thus, as indicated by *Borello, supra,* 221 Cal.App.2d 487, if a landowner defending the lien foreclosure action is the principal on the bond, and if the bond is recorded during the pendency of the action, the landowner is not entitled to be dismissed from the action but will remain to defend against the lienholder's claim. (See Hunt, Claims on Private Works in Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1988) § 2.61, p. 111 ["The defendants on the bond cause of action are the principal and the sureties."].) This is so because when the release bond is recorded, the bond obligations of *both* principal and surety are substituted for the property as the object to which the mechanic's lien attaches.

■ Still to be addressed is the more general question raised by the Court of Appeal regarding the surety's liability when the lien claimant has not served the release bond principal as a defendant in the foreclosure action. The present case directly raises this problem because although plaintiffs have named Anderson, the new owner of the property and the principal on the bond, as a defendant in this action, Anderson has not been served and has not appeared.

We may assume arguendo that a judgment on a lien release bond would not be directly enforceable against a principal who had not been served and had not appeared in the action. (See *Fazzi* v. *Peters* (1968) 68 Cal.2d 590, 594 [68 Cal.Rptr. 170, 440 P.2d 242] ["a judgment may not be entered either for or against one not a party to an action or proceeding"]; but see *Hilton* v. *Reed* (1941) 46 Cal.App.2d 449, 455 [116 P.2d 98] [subsequent purchaser with notice of mechanic's lien foreclosure action bound by judgment of foreclosure although not formally joined as party].) This does not mean, however, that the surety will be compelled to defend the action alone and unassisted by the principal. If only the surety is joined, the resulting judgment will be binding on the principal, provided only that the surety has given notice to the principal "and an opportunity at the surety's request to join in the defense." (Code Civ. Proc., § 1912.) A principal notified of the action by the surety will have the same motivation to defend the action as if formally named as a party, because the judgment will be equally conclusive as a determination of the principal's liability. Consequently, the surety has the means to call upon the principal to defend the lien foreclosure action.

The Court of Appeal expressed concern that if section 3144.5's limitations period did not apply when the release bond was recorded during the pendency of a lien foreclosure action, the plaintiff "could wait years after receiving notice of recording of the bond before bringing the surety into the

action" and the surety would not have sufficient time "to defend the action in the absence of its principal." As noted, the surety would be able to call upon the principal to defend the action. Moreover, the filing of an amended or supplemental complaint adding new parties requires leave of the court (Code Civ. Proc., §§ 464, 473) and leave could be denied, in the court's discretion, if the plaintiff had unreasonably delayed. (See *Bulmash* v. *Davis* (1979) 24 Cal.3d 691, 701 [157 Cal.Rptr. 66, 597 P.2d 469]; *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 667, fn. 2 [134 Cal.Rptr. 815, 557 P.2d 106]; *Flood* v. *Simpson* (1975) 45 Cal.App.3d 644, 647 [119 Cal.Rptr. 675].) Finally, a mechanic's lien foreclosure action not brought to trial within two years after its commencement is subject to dismissal, in the court's discretion, for want of prosecution. (§ 3147.) The use of section 3144.5's limitation period to provide a remedy is unnecessary for the proper protection of sureties and would unfairly burden the enforcement of the constitutionally protected rights of mechanic's lien claimants.

Our conclusion that section 3144.5's limitation period has no application in the present case makes it unnecessary to consider plaintiffs' contentions that the amendments of the complaint relate back to the filing of the original complaint, that section 3144.5 cannot be applied retroactively to plaintiffs' action, and that United should be estopped from asserting section 3144.5 as a defense.

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., and Eagleson, J., concurred.